FILED

2012 MAY 16  PM 2: 14

̇ ̇ MAGISTRATE JUDGE

BY_____

DANIEL G. BOGDEN
United States Attorney
PAMELA A. MARTIN
Assistant United States Attorneys
Lloyd D. George United States Courthouse
333 Las Vegas Boulevard South, Suite 5000
Las Vegas, Nevada 89101
(702) 388-6336

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,       ) | No.   2:12-mj-322-GWF |
|                                 ) | |
| Plaintiff,                      ) | C O M P L A I N T |
|                                 ) | |
| vs.                             ) | [COUNT 1: 21USC 841(a)(1): |
|                                 ) | Distribution of a Controlled Substance] |
| Jeffrey ABRAHAM,                ) | |
|                                 ) | [COUNT 2: 21 USC 841(a)(1): |
|                                 ) | Distribution of a Controlled Substance] |
|                                 ) | |
|                                 ) | [COUNT 3: 18 USC 1956(a)(1)(I): |
|                                 ) | Laundering of a Monetary Instrument] |
| Defendant.                      ) | |

BEFORE the United States Magistrate Judge, Las Vegas, Nevada, the undersigned complainant, being duly sworn, deposes and states:

## COUNT 1

(Distribution of a Controlled Substance)

On or about March 7, 2012, in the District of Nevada, Jeffrey ABRAHAM, the defendant, did knowing and intentionally distribute Benzylpiperazine (BZP), a Schedule I controlled substance in violation of Title 21, United States Code, Section 841 (a)(1), (b)(1)(C).

.   .   .

.   .   .

**COUNT 2**

(Distribution of a Controlled Substance)

On or about March 7, 2012, in the District of Nevada, Jeffrey ABRAHAM, the defendant, did knowing and intentionally distribute Methamphetamine, a Schedule II controlled substance in violation of Title 21, United States Code, Section 841 (a)(1), (b)(1)(C).

**COUNT 3**

(Laundering of a Monetary Instrument)

Beginning on or about January 27, 2012, in the District of Nevada, Jeffrey ABRAHAM, did conduct a financial transaction with proceeds of a Specified Unlawful Activity (SUA) with intent to further the SUA in violation of Title 18, United States Code, Section 1956.

Complainant, Shane Nestor, as a Special Agent with the Drug Enforcement Administration (DEA), states the following as and for probable cause:

1.      I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516. I have been employed by the DEA as a Special Agent since August 2009. Prior to my employment with DEA, I was employed as a Special Agent with U.S. Immigration and Customs Enforcement for approximately 5, years. I am currently assigned to the Las Vegas, Nevada (NV), District Office. In connection with my DEA duties, I investigate criminal violations of the Controlled Substances Act. Through the DEA, I have received specialized training in the enforcement of federal narcotics laws. My training and experience has involved, among other things: (1) the debriefing of defendants, witnesses and informants, as well as others who have knowledge of the distribution and transportation of controlled substances and of the laundering and concealment of proceeds of drug trafficking; (2) surveillance; (3) analysis of documentary and physical evidence; (4) the hand-to-hand purchase of controlled substances; and (5) the execution of search warrants.

2

2.      The following information contained within this criminal complaint is based upon my own participation in this investigation or was provided to me by other law enforcement personnel. All times are approximate.

3.      On March 1, 2012, DEA Special Agent Shane Nestor acting in the Undercover Capacity, negotiated a purchase of 1 "boat" (a boat is a term commonly used amongst narcotics traffickers to refer to 1,000 pills of ecstasy) with Devon JACKSON, a resident of Seattle, Washington. JACKSON agreed to send the ecstasy to Jeffrey ABRAHAM in Las Vegas, NV. SA Nestor could in turn pick up the ecstasy from ABRAHAM upon its arrival in Las Vegas, NV. JACKSON agreed to sell the 1,000 pills of ecstasy to SA Nestor for $3,500. JACKSON instructed SA Nestor to deposit $2,130.00 into his bank account, and pay the additional $1,400.00 upon receiving the ecstasy from ABRAHAM. JACKSON explained that part of the $3,500 price was paid to ABRAHAM for accepting and delivering the package to SA Nestor.

4.      On March 1, 2012, SA Nestor as witnessed by Task Force Officer (TFO) Cletus Meegan deposited $2,130.00 into JACKSON's bank account. After depositing the money, SA Nestor sent JACKSON the following text message: "Just dropped 2130 in. you will have to give me J's number so I can get with him tomorrow". In the text, SA Nestor was referring to ABRAHAM as "J". Following the text message, JACKSON responded with: "Jeff (702) 809-3268".

5.      Previously in this investigation, a subpoena was issued to Sprint Nextel the service provider for telephone number 702-809-3268. On January 31, 2012, Sprint Nextel responded to the subpoena with the subscriber information for 702-809-3268 as follows: Jeffrey ABRAHAM, 410 B and B Lane, Hallsville, Texas.

6.      On March 2, 2012, JACKSON contacted SA Nestor via telephone and stated the ecstasy would be arriving around March 5, 2012. On March 5, 2012, at approximately 3:00 p.m. SA Nestor placed a phone call to ABRAHAM at telephone number 702-809-3268. Upon answering the phone, SA Nestor asked if he was speaking with "Jeff" and ABRAHAM said "yea". SA Nestor told ABRAHAM that he got his phone number from "Devon" (referencing JACKSON). ABRAHAM

3

1  told SA Nestor that the ecstasy was supposed to arrive the following morning and he would call SA

2  Nestor tomorrow (Tuesday March 6, 2012).

3         7.     On March 6, 2012, UC Nestor exchanged the following text messages with

4  JACKSON at telephone number 206-380-9732:

5          3:43 p.m. - JACKSON sent: "It's all good hit jay".

6          3:57 p.m. - UC Nestor sent: "Nice I will hit J and grab them tomorrow on my way out

7          of town".

8          4:57 p.m. - JACKSON sent: "Ok cool"

9  It is your affiant's belief that when JACKSON stated "jay" he was referring to ABRAHAM.

10         8.     On March 6, 2012 at approximately 7:21 p.m. SA Nestor received a phone call

11  from ABRAHAM utilizing telephone number 702-809-3268. ABRAHAM asked if SA Nestor wanted

12  to pick up the ecstasy. SA Nestor arranged to meet ABRAHAM the following day (Wednesday March

13  7, 2012). ABRAHAM informed SA Nestor he resided by the intersection of Rainbow Blvd and

14  Highway 215, and that he would like to meet in that area. (Note: this phone call was not recorded due

15  to unavailability of a recorder at the time of the call.)

16         9.     As part of this investigation, Agents had previously identified 11 Crooked

17  Putter Way, Las Vegas, NV as a possible address for ABRAHAM. A check of the utilities for that

18  residence revealed that ABRAHAM is the listed customer for that address. The residence at Crooked

19  Putter Way is in the same general area as the intersection of Rainbow Blvd and Highway 215.

20         10.    On March 7, 2012 at approximately 10:27 a.m. SA Nestor placed a phone call

21  to ABRAHAM at telephone number 702-809-3268. During the phone call SA Nestor arranged to

22  meet ABRAHAM around 1:00 p.m. near the intersection of Rainbow Blvd and Highway 215, at the

23  parking lot of the Best Buy in order to pick up the ecstasy.

24         11.    On the same date, at approximately 1:00 p.m. SA Nestor parked in the parking

25  lot of the Best Buy. A short time thereafter, SA Nestor observed a Black Cadillac CTS bearing

26  Nevada registration "LVRT90" arrive and park next his vehicle. SA Nestor then observed

4

ABRAHAM get out of the Cadillac and get into the passenger side of SA Nestor's vehicle carrying a black backpack.  ABRAHAM pulled out of the backpack a white envelope and handed it to SA Nestor.  SA Nestor observed inside the white envelope a clear Ziploc bag containing approximately 299.3 grams of blue in color pills pressed with a dolphin emblem.   SA Nestor then handed ABRAHAM $1,400.00 of DEA Official Advance Funds in exchange for the pills.  ABRAHAM counted the money and stated he was to receive $1,600.00.  SA Nestor stated that JACKSON and SA Nestor agreed on $1,400.00.  SA Nestor then stated he would call JACKSON and attempted to contact JACKSON via telephone, however the call went straight to voicemail.  ABRAHAM then stated everything was good, and if SA Nestor owed more he could just deposit it in JACKSON's bank account.  ABRAHAM then exited SA Nestor's vehicle and walked towards the Best Buy store.

12.    While in SA Nestor's vehicle and during the transaction, ABRAHAM asked if SA Nestor could pick up the ecstasy as it arrives, because he (ABRAHAM) didn't like to keep it at his house and did not have his condo anymore.  SA Nestor stated next time he would try to pick them up from ABRAHAM right away.  ABRAHAM then stated he didn't have a problem accepting the packages, as he gets packages all the time.

13.    The blue in color pills pressed with the dolphin emblem purchased from ABRAHAM, were transported back to the DEA Las Vegas office by SA Nestor as witnessed by TFO Meegan.  SA Nestor and TFO Meegan conducted a field test which indicated positive for the presence of Methamphetamine.  The pills were then sent to the DEA Southwest Regional Laboratory for analysis.  On May 14, 2012, SA Nestor was contacted by the DEA Laboratory who advised that the pills tested positive for the presence of both methamphetamine and Benzylpiperazine (BZP).

14.    I know through my training and experience that BZP is a chemical that is typically being used as a substitute for MDMA in making ecstasy due to its similar affects.  Currently, the majority of ecstasy that is being produced in Canada is using BZP as opposed to MDMA as it is cheaper and its legal status is less restrictive in Canada

.  .  .

5

15.     It should also be noted, the SA Nestor also obtained 156.0 grams of suspected ecstasy from ABRAHAM on January 27, 2012 in exchange for $1,500.00 in DEA funds.  These pills were orange in color and pressed with a Batman Emblem.  The laboratory analysis of these pills identified them as being made up primarily of BZP.  During this transaction, SA Nestor asked ABRAHAM about the quality of the pills and he stated that "his boy" always comes through with the right ones.  It is your affiants belief that ABRAHAM was referring to JACKSON and was stating that he (JACKSON) always provides good quality pills.  SA Nestor also asked if he could contact ABRAHAM in the future about getting more pills to which ABRAHAM stated SA Nestor could.  ABRAHAM also made the statement during this purchase that he had been busy going to Dallas doing his "weed" thing.

16.     Immediately following the purchase conducted by SA Nestor on January 27, 2012, ABRAHAM was observed driving to Bank of America Airport Center branch located at 6035 S Eastern Avenue, Las Vegas, NV  89119.  While inside the branch, ABRAHAM conducted a cash deposit of $1,200.00 into Devon JACKSON's checking account #000 8949 7424.

17.     It is your affiant's belief that the $1,200.00 transaction included proceeds of a specified unlawful activity, specifically, a portion of the $1,500.00 in drug proceeds given to ABRAHAM for the purchase of pills that was originally negotiated between SA Nestor and JACKSON.

18.     A check of criminal indices revealed ABRAHAM has prior arrests in both Texas and Nevada.  ABRAHAM was previously arrested in Texas for Theft, Assault causing Bodily Injury, Driving while Intoxicated and Possession of a Controlled Substance.  ABRAHAM was also arrested in Nevada for Assault with a Deadly Weapon.

.   .   .

.   .   .

.   .   .

.   .   .

6

19.     Based on my training and experience, I believe that there is probable cause to believe that Jeffrey ABRAHAM violated Title 21, United States Code, Section 841, Distribution of a Controlled Substance and Title 18 United States Code, Section 1956, Laundering of Monetary Instruments.


Shane Nestor, Special Agent
Drug Enforcement Administration


SUBSCRIBED and SWORN to before me this 16th day of May, 2012

UNITED STATES MAGISTRATE JUDGE

7